**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

FERNANDO R. JIMENEZ,                    )        3:05-CV-00638-LRH (RAM)
                                        )
                Plaintiff,              )
                                        )        **REPORT AND RECOMMENDATION**
        vs.                             )        **OF U.S. MAGISTRATE JUDGE**
                                        )
GREG COX, et al.,                       )
                                        )
                Defendants.             )
_____)

   This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

   Before the court is Defendants' Motion for Summary Judgment (Doc. #30). Plaintiff opposed the motion (Doc. #50) and Defendants replied (Doc. #83). Also before the court is Plaintiff's Motion for Court to Serve and Process 18 U.S.C. § 242 and 28 U.S.C. § 1442(a)(1) Notices for Federal Prosecution of all Named Defendants (Doc. #43). Defendants opposed the motion (Doc. #48) and Plaintiff replied (Doc. #49). Also before the court is Plaintiff's Motion for Court to Apply the Unconstitutional Conditions Doctrine to All Counts in the Second Amended Complaint (Doc. #58). Defendants opposed the motion (Doc. #64) and Plaintiff replied (Doc. #69). Also before the court is Plaintiff's Motion for Court to Apply FRCP 10(c) to All Exhibits Relating to all Pleadings (Doc. #85). Defendants opposed the motion (Doc. #86) and Plaintiff replied (Doc. #87).

///

# I. BACKGROUND

Plaintiff is a prisoner at Ely State Prison (ESP) in Ely, Nevada in the custody of the Nevada Department of Corrections (NDOC) (Doc. #20).  Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964 alleging prison officials violated his Fourteenth Amendment right to due process, his Eighth Amendment rights against excessive force, failure to provide medical care and unsanitary conditions and his First Amendment right against retaliation (*Id.*).  Plaintiff also asserts state law claims for negligence and emotional distress (*Id.*).  Plaintiff names as defendants Greg Cox, as Assistant Director of Operations at ESP; Glen Whorton, as Director of NDOC; Mike Scheel, as Lieutenant at ESP;  E.K. McDaniel, as Warden at ESP; Adam Endel, as Assistant Warden of Programs at ESP; Robert Chambliss, as Caseworker at ESP; Mark Drain, as Caseworker at ESP; Claude Willis as Caseworker at ESP; and Harold Curry, as Correctional Officer at ESP (*Id.*).  All Defendants are sued in both their official and individual capacities (*Id.*)

Plaintiff alleges Defendants failed to provide him with due process for over five (5) years regarding his validation as a gang member/associate and stigmatization as a Security Threat Group (STG) member of the Nortenos (*Id.*).  Plaintiff further alleges Defendants violated § 1981 and his equal protection rights by discriminating against him in placing him in indefinite administrative segregation based on his race and by not providing Plaintiff with a classification review for medium custody while providing other similarly situated inmates with said reviews (*Id.*).  Plaintiff further alleges Defendant Drain retaliated against him for exercising his First Amendment rights by filing a grievance against Defendant Drain's son and Defendants violated his right against cruel and unusual punishment by forcing him to expose his bare knees to an unsanitary shower floor, which exposed him to diseases (*Id.*).  Finally, Plaintiff alleges Defendants used excessive force in applying handcuffs and leg restraints that were too small and too tight and forcing Plaintiff to pull a cart carrying his personal belongings, which

1   caused sever lacerations, bleeding, bruises, cuts and scars to his wrists and ankles, and then

2   Defendants denied him medical care for these injuries (*Id.*).

3       Plaintiff's Second Amended Complaint includes the following causes of action: 1)

4   violation of the Equal Protection Clause (Claims I and II); 2) violation of § 1981 (Claims I and

5   II); 3) First Amendment retaliation (Claim III); 4) violation of the Due Process Clause of the

6   Fourteenth Amendment (Claim V); 5) Eighth Amendment excessive force (Claim VI); 6)

7   Eighth Amendment failure to provide medical care (Claim VI); 7) Eighth Amendment

8   unsanitary conditions (Claim VII); 8) negligence (all claims); and 9) emotional distress (all

9   claims) (Doc. #20).

10   **II. DISCUSSION**

11   **A.   MOTION FOR COURT TO SERVE AND PROCESS 18 U.S.C. § 242 AND 28 U.S.C. §**

12   **1442(A)(1) NOTICES FOR FEDERAL PROSECUTION OF ALL NAMED DEFENDANTS**

13       Plaintiff requests the court serve and process 18 U.S.C. § 242 and 28 U.S.C. § 1442(a)(1)

14   notices to the federal district court prosecutor, which requests the prosecutor file criminal

15   charges against Defendants (Doc. #43).   This is not a proper function of the court.

16   Accordingly, Plaintiff's motion is **DENIED**.

17   **B.   MOTION FOR COURT TO APPLY THE UNCONSTITUTIONAL CONDITIONS DOCTRINE**

18   **TO ALL COUNTS IN THE SECOND AMENDED COMPLAINT (DOC. #58)**

19       The doctrine of unconstitutional conditions provides that the Government cannot

20   condition the receipt of a government benefit on waiver of a constitutionally protected right.

21   *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994); *see also United States v. Scott*, 450 F.3d

22   863, 866  (9th Cir. 2006); *Vance v. Barrett*, 345 F.3d 1083, 1091-1092 (9th Cir. 2003).  The

23   doctrine functions to ensure that the Government may not indirectly accomplish a restriction

24   on constitutional rights which it is powerless to decree directly. *Perry v. Sindermann*, 408

25   U.S. 593 (1972) ("[T]his Court has made clear that even though a person has no 'right' to a

26   valuable governmental benefit and even though the government may deny him the benefit

27   for any number of reasons, there are some reasons upon which the government may not rely.

28

It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests.... For if the [rule were otherwise the] government could 'produce a result which [it] could not command directly....' Such interference with constitutional rights is impermissible."). The Ninth Circuit explains:

> The [g]overnment is a monopoly provider of countless services, notably law enforcement, and we live in an age when government influence and control are pervasive in many aspects of our daily lives. Giving the government free rein to grant conditional benefits creates the risk that the government will abuse its power by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections. Where a constitutional right "functions to preserve spheres of autonomy ... [u]nconstitutional conditions doctrine protects that [sphere] by preventing governmental end-runs around the barriers to direct commands."

*Scott*, 450 U.S. at 866-867 (citations omitted).

The doctrine of unconstitutional conditions has long been recognized, finding its origin in *Barron v. Burnside*, 121 U.S. 186 (1887) ("[N]o conditions can be imposed by the state which are repugnant to the constitution and laws of the United States"). However, case law indicates it is difficult to predict the occasions when the doctrine is applied. *See Rust v. Sullivan*, 500 U.S. at 173, 205 (1991) (Blackmun, J. dissenting) (citing Richard Epstein, Unconstitutional Conditions, State Power, and the Limits of Consent, 102 Harv. L.Rev. 4, 6 (1988) (describing this problem as "the basic structural issue that for over a hundred years has bedeviled courts and commentators alike"); *see also Alliance for Open Society Intern., Inc. v. U.S. Agency for Intern. Development*, 430 F. Supp. 2d 222, 253 (S.D.N.Y. 2006) (finding the Supreme Court's line of unconstitutional conditions cases has been recognized as a troubled area of Supreme Court jurisprudence in which a court ought not entangle itself unnecessarily.). Nevertheless, the Ninth Circuit has recognized that "even in a prison setting, the Constitution places some limits on a State's authority to *offer discretionary benefits* in exchange for a waiver of constitutional rights." *Vignolo v. Miller*, 120 F.3d 1075, 1078 (9th Cir. 1997) (emphasis added). The Ninth Circuit is also cognizant that "[t]hose limits are finite, and ... Nevada may have important countervailing interests in the efficient management of its prison." *Id.*

4

1    Here, Plaintiff asserts the court should apply the unconstitutional conditions doctrine

2    to Claims I, II, III, V, VI and VII (all remaining claims) in Plaintiff's Second Amended

3    Complaint (Doc. #20).  Plaintiff argues Defendants have "de facto and/or admitted"

4    compelling Plaintiff to waive the following constitutional rights: 1) the right not to be exposed

5    to overpopulation of inmates; 2) the right not to be subjected to unequal racial

6    classifications/discrimination; 3) the right not to be subjected to unequal treatment and

7    housing classification; 4) the right not to be subjected to unequal opportunities to benefit from

8    NDOC federally funded programs; 5) the right not to be penalized for exercising his federally

9    protected Miranda right; 6) the right not to be locked down in segregation virtually 24-hours

10    a day; 7) the right not to be locked down in segregation for four (4) plus years; 8) the right

11    not to be exposed to harmful weather conditions or refused out of cell time; 9) the right not

12    to be retaliated against for exercising speech; 10) the right not to be stigmatized without any

13    evidence or due process; 11) the right not to be subjected to excessive use of force through

14    restraints; 12) the right not to be exposed to diseased and contagious inmates' maladies or

15    refused a shower; and 13) the right not to be deprived of basic human needs of hygiene (soap)

16    (Doc. #58 at 2).

17    Defendants argue Plaintiff's motion does not make sense and appears to be asking the

18    court to amend Plaintiff's Second Amended Complaint sua sponte (Doc. #64).  Defendants

19    further argue a motion to amend is not proper at this time and Plaintiff's motion is an attempt

20    to have the court set prison policies (*Id*. at 3-4).  Defendants assert it is unnecessary for

21    Plaintiff to file a motion reiterating his constitutional rights and the instant motion is simply

22    another attempt to have NDOC's actions declared unconstitutional (*Id*. at 4).

23    Plaintiff responds that he is not seeking to amend his Second Amended Complaint, but

24    rather, he is seeking to have the unconstitutional conditions doctrine applied to the facts of

25    this case because the doctrine is an independent law (Doc. #69 at 2).  While Plaintiff's motion

26    simply lists numerous alleged constitutional rights he would like the doctrine applied to,

27    Plaintiff's reply elaborates that Defendants conditioned his right to be released from indefinite

28                                                          5

1    segregation, his right against unequal treatment, his right against racial discrimination and

2    his right to equal opportunities to benefit from NDOC federally funded programs on a waiver

3    of his Miranda rights by requiring him to debrief (*Id.*)  Plaintiff further explains that

4    Defendants conditioned his right to a shower and his right to soap on a waiver of his right to

5    sanitation; Defendants conditioned his right to out-of-cell time on a waiver of his right not

6    to be exposed to harmful weather conditions; Defendants conditioned his right not to be

7    subjected to disciplinary sanctions on a waiver of his right against use of excessive force; and,

8    finally, Defendants conditioned his right not to be stigmatized on a waiver of the same right

9    (*Id.*).  Plaintiff contends the above articulated federally protected rights are clearly established

10   and well known and Defendants have forced Plaintiff to waive those rights as a condition of

11   benefits (*Id.* at 3).

12        Under the unconstitutional conditions doctrine Plaintiff must  show the State offered

13   *benefits* in exchange for a waiver of his constitutional rights.  Plaintiff has not done that for

14   each of his claims.  Although, in his motion, Plaintiff asserts Defendants compelled him to

15   waive his constitutional rights, Plaintiff has failed to allege sufficient facts demonstrating the

16   alleged waiver was in return for State-offered benefits.  Rather, Plaintiff's Second Amended

17   Complaint shows Plaintiff simply alleges Defendants violated his constitutional rights and

18   deprived him of equal protection by denying benefits, e.g., federally-funded programs. Plaintiff

19   has not pled sufficient facts demonstrating Defendants offered these programs to Plaintiff in

20   exchange for a waiver of any constitutional rights.  Accordingly, this motion should be

21   **DENIED**.

22   **C.**    **MOTION FOR COURT TO APPLY FRCP 10(C) TO ALL EXHIBITS RELATING TO ALL**

23   **PLEADINGS**

24        FED. R. CIV. P. 10(c) provides: "A statement in a pleading may be adopted by reference

25   elsewhere in the same pleading or in any other pleading or motion. A copy of a written

26   instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

27

28                                           6

1  Plaintiff requests the court consider his exhibits (specifically, Exhibits 1-59) together
2  with his pleadings, pursuant to FED. R. CIV. P. 10(c) (Doc. #85). Defendants argue Plaintiff's
3  request is premature and vague because it requests all exhibits already on file apply to all his
4  pleadings and motion (Doc. #86). Plaintiff clarifies he is requesting the court consider
5  Exhibits 1 through 58, filed with his opposition to Defendants' Motion for Summary Judgment
6  (Doc. #50), and Exhibit 59, filed with the instant motion (Doc. #85), with his opposition to
7  Defendants' Motion for Summary Judgment (Doc. #50).

8  To the extent Plaintiff complied with FED. R. CIV. P. 10(c) and adopted any exhibits by
9  reference in his opposition, the court will consider said exhibits; however, the court will not
10  consider exhibits not specifically referenced in Plaintiff's opposition. Accordingly, Plaintiff's
11  request for the court to consider all pleadings previously filed, without specific reference to
12  such pleadings in Plaintiff's opposition, is **DENIED**.

13  **D.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

14  Defendants assert Plaintiff's claims fail as a matter of law because Plaintiff cannot
15  establish any alleged conduct resulting in a deprivation of his constitutional rights (Doc. #30).
16  Specifically, Defendants assert Plaintiff's § 1981 claim fails because he was not denied equal
17  rights under the law (*Id.* at 11). Defendants also assert Plaintiff's due process claim fails
18  because he was provided with due process regarding his security threat group affiliation (*Id.*).
19  Defendants assert placing leg restraints and handcuffs on Plaintiff was not an excessive use
20  of force by Defendant (*Id.* at 13) and Plaintiff was provided adequate medical care for his
21  alleged injuries (*Id.* at 15). Defendants further assert the showers at ESP do not constitute
22  cruel and unusual punishment because they are cleaned regularly (*Id.* at 18) and Defendants
23  did not have a retaliatory motive to keep Plaintiff in administrative segregation (*Id.* at 20).
24  Finally, Defendants assert Plaintiff has failed to plead personal involvement on the part of
25  several Defendants, supervisory Defendants cannot be held liable for the acts of their
26  subordinates, and all Defendants are entitled to federal immunity and discretionary-act
27  immunity (*Id.* at 7-9, 22-24).

28

Plaintiff essentially argues he has sufficiently pled constitutional violations on each of his claims, which are discussed more fully below (Doc. #50). He further argues Defendants are not entitled to Eleventh Amendment immunity, qualified immunity or discretionary-act immunity and Defendants were each personally involved in the alleged constitutional deprivations (*Id.*).

### LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

8

1       In evaluating the appropriateness of summary judgment, three steps are necessary:

2   (1) determining whether a fact is material; (2) determining whether there is a genuine issue

3   for the trier of fact, as determined by the documents submitted to the court; and (3)

4   considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477

5   U.S. at 248.  As to materiality, only disputes over facts that might affect the outcome of the

6   suit under the governing law will properly preclude the entry of summary judgment; factual

7   disputes which are irrelevant or unnecessary will not be considered. *Id.*  Where there is a

8   complete failure of proof concerning an essential element of the nonmoving party's case, all

9   other facts are rendered immaterial, and the moving party is entitled to judgment as a matter

10  of law. *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut,

11  but an integral part of the federal rules as a whole. *Id.*

12  **ANALYSIS**

13      The first inquiry must be whether there was, in fact, a violation of Plaintiff's

14  constitutional rights.  This issue is dispositive as to Plaintiff's federal claims and if this

15  question is answered negatively, the court must grant summary judgment on the merits

16  without the need to consider Defendants' remaining arguments.  Accordingly, the court will

17  address this issue first as to each claim.

18      **A.**    **Constitutional Violations**

19          1.    Equal Protection (Claims I and II)

20      "Prisoners are protected under the Equal Protection Clause of the Fourteenth

21  Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539,

22  556 (1974) (citing *Lee v. Washington*, 390 U.S. 333 (1968)); *see also Turner v. Safley*, 482

23  U.S. 78, 84 (1987).  "[R]acial segregation, which is unconstitutional outside prisons, is

24  unconstitutional within prisons, save for 'the necessities of prison security and discipline.'"

25  *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (per curiam) (quoting *Lee*, 390 U.S. at 334).  Thus, use

26  of race in making initial housing classifications constitutes an impermissible racial

27

28  9

1    classification afoul of the Equal Protection Clause. *Johnson v. California*, 321 F.3d 791 (9th

2    Cir. 2003), *cert. granted*, 540 U.S. 1217, (2004).

3         In order to state a viable Equal Protection claim, Plaintiff "must show that the

4    defendant acted with an intent or purpose to discriminate against him based upon his

5    membership in a protected class." *Serrano v. Francis*, 345 F.3d 1971, 1982 (9th Cir. 2003)

6    (citing *Barren v. Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)).   "Intentional

7    discrimination means that a defendant acted at least in part *because of* a plaintiff's protected

8    status." *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis

9    in original).  Thus, to avoid summary judgment Plaintiff "must produce evidence sufficient

10   to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision

11   was racially motivated." *Id.* (citing *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 732

12   (9th Cir. 2003).  Where the state admits considering race to classify an inmate, the inmate

13   need not prove discriminatory intent. *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004).

14        Plaintiff contends Defendants classified him in indefinite administrative segregation

15   based on his race (Doc. #50). To support this contention, Plaintiff asserts the following facts:

16   1) he has no gang affiliation; 2) he has no tattoos; 3) he has less "RFP" points than other

17   prisoners in medium security prison housing; 4) he has less than ten (10) months until his

18   release date as compared to most prisoners at ESP with long-term sentences; 5) he has the

19   possibility of having his sentence expired within 1-5 years unlike most inmates housed at ESP

20   who have no possibility of being released; and 6) he has no disciplinary violations for over 4

21   ½ years unlike most inmates who have violations within the past twelve (12) months (*Id.* at

22   20).  Plaintiff further contends Defendants denied him the benefits and opportunities of the

23   following federally-funded programs: OASIS, WINGS, and various college programs (*Id.* at

24   22). Plaintiff essentially argues that he was validated a Norteno simply because he is Hispanic

25   and Defendants have used that erroneous validation to classify Plaintiff in administrative

26   segregation indefinitely.  Finally, Plaintiff contends Defendants failed to provide him with a

27

28                                              10

1   classification review for medium custody while providing similarly situated inmates with such

2   a review and Defendants failed to provide him with sufficient out-of-cell time (*Id*.)

3       Defendants deny considering Plaintiff's race in classifying him in indefinite

4   administrative segregation and assert the determination to house Plaintiff in administrative

5   segregation and his classification were based on safety and security concerns due to the fact

6   that Plaintiff was attacked by another inmate in September 2003 and is believed to be

7   affiliated with a security threat group (STG) known as Norteno (Doc. #83 at 6). Specifically,

8   Defendants' contend Plaintiff is housed in indefinite administrative segregation due to an

9   attack on him that took place on September 21, 2003 apparently by his co-defendant[1] in his

10  criminal case, and Plaintiff is validated a Norteno and refuses to debrief regarding that

11  incident (Doc. #30 at 11-12). Defendants further contend that Plaintiff has a high risk factor

12  score (RFS) due to a battery he sustained in the visiting area on March 29, 2002 and an assault

13  and battery charge on staff on October 20, 2002.[2] (*Id*. at 12). Defendants assert that a

14  debriefing regarding the September 2003 attack could result in a change in Plaintiff's

15  classification (*Id*. at 16). Defendants further assert that the same restrictions that apply to

16  Plaintiff apply to all other inmates in his Administrative Housing unit  (*Id*. at 17).

17      A discriminatory intent or purpose may be proved by circumstantial evidence, such

18  as a pattern of conduct unexplainable on grounds other than race. *See Village of Arlington

19  Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977); *Domingo*

20

21      [1] It is unclear from the pleadings whether Plaintiff's co-defendant is validated a Norteno; however, Claude

22  Willis states in his Affidavit that Plaintiff has been harmed by other members of his validated association

23  ("Nortenos") and the September 2003 attack is the only incident referenced by Defendants to support their

    position (*See* Doc. #30 at 13).

24      [2] It should be noted that Defendants admit Plaintiff was not placed in administrative segregation for

25  violating a law or rule; but, rather that he was placed in segregation for his own protection and for safety and

26  security concerns (Doc. #30 at 4). Furthermore, the March 2002 battery took place more than a year prior to the

    classification and the October 2002 assault and battery charge took place almost a year prior.

27

28  11

1   *v. New England Fish Co.,* 727 F.2d 1429, 1438 (9th Cir. 1984).  Furthermore, Plaintiff need

2   only show Defendants acted *at least in part because of* Plaintiff's protected status. *Serrano,*

3   345 F.3d at 1982.  Plaintiff has made such a showing.

4         Defendants' mere denial of considering race to classify Plaintiff and their contention

5   that debriefing may result in a reclassification of Plaintiff does not render summary judgment

6   appropriate on this issue.  If Plaintiff was, in fact, validated and/or classified based on race,

7   the erroneous validation and/or classification is not simply cured by requiring Plaintiff to

8   debrief in order to be correctly classified.  The only justifications given by Defendants for the

9   classification are the attack on Plaintiff by his co-defendant and his STG validation.  Plaintiff

10   disputes his STG validation and Defendants have proffered insufficient evidence to support

11   the validation.  The only evidence in the record supporting the validation is NDOC Form 1598,

12   dated September 21, 2005, which merely informs Plaintiff of the STG identification and

13   includes a hand-written remark informing Plaintiff that the identification is supported by "I.G.

14   input 3.21.2000 " (Doc. #52 at 30).  Defendants offer no evidence indicating what constitutes

15   I.G. input.  While Defendants may have initially placed Plaintiff in administrative segregation

16   for his own protection due to an attack on Plaintiff, the placement of Plaintiff in *indefinite*

17   administrative segregation raises genuine issues of material fact as to whether Defendants

18   acted, *at least in part*, because of Plaintiff's race.

19         Viewing the facts in the light most favorable to Plaintiff, there are genuine issues of

20   material fact as to whether Defendants classified Plaintiff in indefinite administrative

21   segregation based on race.  Thus, Plaintiff has sufficiently pled a violation of his constitutional

22   right to equal protection.  Accordingly, summary judgment on Claims I and II regarding equal

23   protection should be **__DENIED__**.

24   ///

25   ///

26   ///

27   ///

28

1

2.      Section 1981 (Claims I and II)

2        Section 1981[3] guarantees "all persons" enjoy the same rights that "white citizens" enjoy.

3    *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004).  To establish a violation of § 1981,

4    Plaintiff must show proof of an intent to discriminate against him on the basis of his race. *See*

5    *General Contrators Assoc. v. Pennsylvania*, 458 U.S. 375, 390-391 (1982); *Washington v.*

6    *Davis*, 426 U.S. 229 (1976); *see also Gay v. Waiters' and Dairy Lunchmen's Union, Local No.*

7    *30*, 694 F.2d 531, 537 (9th Cir. 1982); *Craig v. County of Los Angeles*, 626 F.2d 659, 668 (9th

8    Cir. 1980).  Intent may be proved by circumstantial evidence, such as a pattern of conduct

9    unexplainable on grounds other than race. *See Village of Arlington Heights v. Metropolitan*

10   *Housing Development Corp.*, 429 U.S. 252, 266 (1977); *Domingo v. New England Fish Co.*,

11   727 F.2d 1429, 1438 (9th Cir. 1984).

12        For the same reasons set forth under Plaintiff's equal protection claims, there are

13   genuine issues of material fact regarding Plaintiff's § 1981 claims.  If the facts are as Plaintiff

14   posits, he has sufficiently shown a violation of his constitutional rights. Accordingly, summary

15   judgment on Claims I and II regarding § 1981 should be **DENIED**.

16

3.      Retaliation (Count III)

17        Inmates retain their First Amendment rights, even within the expected conditions of

18   confinement. *Hines v. Gomez*, 108 F.3d 265, 270 (9th Cir. 1997).  It is well established that

19   when prison officials retaliate against inmates for exercise of the inmate's First Amendment

20   rights, such as filing a grievance against a prison guard, the inmate has a claim cognizable

21   under § 1983. *Barnett v. Centoni,* 31 F.3d 813, 815-816 (9th Cir. 1994); *see also Rhodes,* 408

22   F.3d 559, 567 (9th Cir. 2005)*(*accepting this proposition and citing decisions of other circuits

23   that accord).

24

25

26        _____

      [3] The text of § 1981 circumscribes the kinds of protections that may be claimed under its auspices.

27

28                                             13

1    In order to prove a claim of First Amendment retaliation, Plaintiff must (1) assert "that

2    a state actor took some adverse action against him (2) because of (3) his protected conduct,

3    and that such action (4) chilled the Plaintiff's exercise of his First Amendment rights, and (5)

4    the action did not reasonably advance a legitimate correctional goal." *Rhodes,* 408 F.3d at 567-

5    68.  Furthermore, in pursuing a claim of retaliation, "[t]he plaintiff bears the burden of

6    pleading and proving the absence of legitimate correctional goals for the conduct of which he

7    complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)**.**

8    Defendants assert Plaintiff failed to show Defendant Drain retaliated against him for

9    filing a grievance against Defendant Drain's son because Defendant Drain was not involved

10   in any way in the grievance at issue (Doc. #30 at 21).  Furthermore, Defendants assert that

11   Plaintiff's segregation was related to a legitimate and penological interest of preserving and

12   maintaining institutional safety (Doc . #83 at 8).

13   Plaintiff argues that Defendant Drain came to Plaintiff and told him: "You don't wanna

14   talk and you wanna write a grievance on my son, I will make sure you sit and rot in

15   segregation." (Doc. #50-2 at 2).  Plaintiff further argues that despite the fact the Defendant

16   Drain's "friend and co-worker" handled the grievance, Defendant Drain nevertheless retaliated

17   against him because of the grievance by seeing to it Plaintiff remained in indefinite

18   administrative segregation (*Id*. at 3).

19   It is undisputed that Defendant Drain was aware of the grievance filed against his son.

20   It is also undisputed that Plaintiff was already placed in administrative segregation when he

21   filed the grievance.  Thus, Plaintiff does not allege Defendant Drain retaliated against him by

22   placing him in administrative segregation; rather, Plaintiff alleges Defendant Drain retaliated

23   against him by threatening to ensure he remained in administrative segregation for filing the

24   grievance and not for a legitimate penological interest.

25   Clearly, if Defendant Drain threatened to ensure Plaintiff "rotted" in administrative

26   segregation, said threat would have a chilling effect on Plaintiff filing another grievance, at

27   least against Defendant Drain's son.  The Ninth Circuit recognized, in *Hines v. Gomez*, that

28                                              14

a chilling effect on a prisoner's First Amendment right to file prison grievances is sufficient to raise a retaliation claim. 108 F.2d 265, 269 (9th Cir. 1997) (citing *Sandin v. Conner*, 515 U.S. 472, 487, f.11 (1995)).  Furthermore, even if Plaintiff *arguably* was initially placed in administrative segregation for a valid penological purpose or would have otherwise ended up there, if Defendant Drain abused that classification in an attempt to punish Plaintiff for filing a grievance, he cannot assert the continued classification served a valid penological purpose. *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Viewing the facts in the light most favorable to Plaintiff, there are genuine issues of material fact as to whether Defendant Drain threatened to ensure Plaintiff "rotted" in administrative segregation for filing a grievance against Defendant Drain's son and did, in fact, ensure Plaintiff remained in administrative segregation, thereby, chilling Plaintiff's First Amendment right to file grievances.  The fact that Defendant Drain did not personally handle Plaintiff's grievance is not dispositive on whether Defendant Drain had or has anything to do with why Plaintiff remains in administrative segregation.  Additionally, the fact that Plaintiff still remains in indefinite administrative segregation raises material questions of fact regarding whether Defendant Drain's alleged threat "has come to fruition." (Doc. #50-2 at 4).  Under these facts, Plaintiff has sufficiently pled a violation of his First Amendment rights.  Accordingly, summary judgment on Claim III should be **<u>DENIED</u>**.

### 4.   Due Process (Count V)

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law," and protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  A liberty interest may arise from either of two sources: the due process clause or state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir.1986), *cert. denied*, 481 U.S. 1069 (1987).

Defendants assert Plaintiff failed to demonstrate his liberty interests were violated because he was provided with an STG due process notice in accordance with AR 446 and

15

1    Plaintiff has failed to debrief in accordance with the procedures set forth in AR 446 (Doc. #30

2    at 12).  Thus, Defendants assert that because Plaintiff refuses to debrief, his due process

3    argument fails as a matter of law (*Id*. at 12-13).

4        Plaintiff asserts he has a liberty interest arising from the Due Process Clause of the

5    Fourteenth Amendment (Doc. #50 at 28).  Plaintiff was apparently validated an STG in March

6    2000 and was served with an STG notice in August 2005, five (5) years after his initial

7    validation (Doc. #30 at 12).  Thus, the crucial inquiry is whether Plaintiff had a liberty interest

8    in his STG validation prior to the implementation of AR 446 or if AR 446 ultimately created

9    a liberty interest.  Plaintiff argues the adverse consequence of stigmatization being branded

10   an STG creates triggers Plaintiff's due process rights (Doc. #50 at 28).  Plaintiff asserts the

11   prison gang label Defendants placed on him constitutes a deprivation of liberty and has

12   adverse consequences, such that it amounts to a "stigma." (*Id*. at 29).  Plaintiff further asserts

13   Defendants must provide Plaintiff with due process before labeling him an STG, not after the

14   adverse classification (*Id*. at 30).  Plaintiff ultimately compares the alleged "social stigma" of

15   being validated an STG with that of an involuntary civil commitment and an imposition of

16   sex offender status including therapy as condition of release. (*Id*. at 28 (citing *Vitek v. Jones*,

17   445 U.S. 480 (1983); *Coleman v. Dretke*, 409 F.3d 668 (9th Cir. 2005)).

18       The court notes Plaintiff's administrative segregation did not take place until

19   approximately three (3) years after his initial validation.  Thus, Plaintiff's "social stigma"

20   argument is not comparable to *Vitek* and *Coleman* because Plaintiff bases his due process

21   argument on the mere STG classification, alone. *See Vitek*, 445 U.S. at 493-494 (finding a

22   liberty interest in the stigmatizing effect of being labeled mentally ill *together* with mandatory

23   behavior modification treatment) and *Coleman*, 395 F.3d at 223 (holding that labeling an

24   inmate as a sex offender *and* requiring intrusive and behavior-modifying therapy as a

25   condition of parole implicated a liberty interest).  Here, Plaintiff was not validated an STG

26   *and* placed in administrative segregation based on that validation. Administrative segregation

27   happened much later.

28

1    Plaintiff does, nevertheless, argue he was denied due process in the validation itself.

2    Defendants respond by simply contending Plaintiff was not provided with due process in

3    March 2000 because the due process procedures did not become facility-wide until August

4    2005 (Doc. #30 at 12).[4]  Thus, Defendants apparently contend Plaintiff was not entitled to

5    due process until NDOC set procedures in place granting an inmate due process.  Defendants'

6    argument fails.

7            The Ninth Circuit expressly recognized a due process claim where there was insufficient

8    evidence in the record to validate the inmate as a member of a prison gang. *Bruce v. Ylst,* 351

9    F.3d 1283, 1287-1288 (9th Cir. 2003).  According to *Bruce*, this type of due process claim is

10   subject to the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

11   *Id.* at 1287.  The court reasoned that the *Hill* standard, and not the heightened *Wolff* standard,

12   applies because the policy of validating suspected gang affiliates and assigning such affiliates

13   to a security housing unit is not a disciplinary measure, but an administrative strategy

14   designed to preserve order in the prison and protect the safety of all inmates. *Id.*; *see also*

15   *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986).  Although *Bruce* was decided in 2003,

16   after Plaintiff's 2000 validation, the Ninth Circuit found the inmate in *Bruce* was entitled to

17   due process when he was validated in 1998, after Plaintiff's validation in this case. *Bruce*, 351

18   F.3d at 1286.

19           "Under Hill, [the court] do[es] not examine the entire record, independently assess

20   witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there

21   is any evidence in the record that could support the conclusion.'" *Id.* at 1288 (citing *Hill*, 472

22   U.S. at 455-56).  As previously discussed, the only evidence in the record supporting Plaintiff's

23   STG validation is NDOC Form 1598, dated September 21, 2005 (five years after Plaintiff's

24   validation), which merely informs Plaintiff of the STG identification and includes a hand-

25

26           [4] The court notes Defendants did not raise a statute of limitations defense regarding the March 2000

27   validation; therefore, this claim is properly before the court.

28                                                      17

1    written remark informing Plaintiff that the identification is supported by "I.G. input

2    3.21.2000" (Doc. #52 at 30). Defendants provide no further evidence relied upon to validate

3    Plaintiff an STG, nor do they explain what evidence constitutes "I.G. input" from March 2000.

4    Under these facts, the court cannot say there is "some evidence" in the record to support

5    the STG validation. Thus, there are genuine issues of material fact as to whether Defendants

6    violated Plaintiff's due process rights when they validated him an STG and Plaintiff has

7    sufficiently pled a constitutional deprivation. Accordingly, summary judgment on Claim V

8    should be **DENIED**.

9                              5.    Excessive Force (Count VI)

10    The excessive force analysis begins with identification of the specific constitutional right

11    allegedly infringed by the officers' use of force. *Graham v. Connor*, 490 U.S. 386, 393-394

12    (1989). The Ninth Circuit has opined that when prison officials use excessive force against

13    prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual

14    punishment. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). Thus, Plaintiff's excessive

15    force claim is analyzed solely under the Eighth Amendment and not the Fourth Amendment

16    as Plaintiff contends. *See P.B. v. Koch*, 96 F.3d 1298 (9th Cir. 1996) (citing *Graham*, 490 U.S.

17    at 394) ("[A] convicted prisoner is protected from excessive force by the Eighth Amendment

18    and a citizen being arrested or investigated is protected from excessive force by the Fourth

19    Amendment.").

20    Defendants assert Plaintiff's excessive force claim fails because the policy at ESP

21    requires staff to place handcuffs on inmates housed in segregation when moving those inmates

22    outside of the segregation unit (Doc. #13). Defendants further assert restraint policies at

23    prisons are necessary to maintain internal security and to maintain safety and security in the

24    prison (*Id*. at 13-14). Defendants contend that Plaintiff is alleging he needs to have special

25    "large man" restraints; but, Plaintiff is not overly large and has not requested the medical

26    department issue an order for large-man restraints (*Id*. at 14). Finally, Defendants contend

27    that, although Plaintiff was required to pull a cart with his property while in restraints, there

28                                              18

1    was not an excessive amount of property to be transported (*Id*. at 15).  Defendants assert they

2    made a good faith effort to maintain the security of the institution by following the restraint

3    policy when they placed Plaintiff in leg and arm restraints and Defendants did not act in a

4    malicious and sadistic manner (*Id*.).

5        Plaintiff argues that, because there was no prison disturbance at the time the excessive

6    force was used, the "malicious and sadistic" legal standard does not apply and, instead, the

7    Fourth Amendment "objectively reasonable" legal standard must be used (Doc. #50 at 32).

8        In the Ninth Circuit, excessive force in the prison context does not amount to a

9    constitutional violation if it is applied in a good faith effort to restore discipline and order and

10   not "maliciously and sadistically for the very purpose of causing harm." *Clement*, 298 F.3d

11   at 903.  "This standard necessarily involves a more culpable mental state than that required

12   for excessive force claims arising under the Fourth Amendment's unreasonable seizures

13   restriction.  For this reason, under the Eighth Amendment, [the court] look[s] for malicious

14   and sadistic force, not merely objectively unreasonable force.  Under this heightened standard,

15   the officials' liability for excessive force in this case is much more doubtful." *Id*.  Contrary to

16   Plaintiff's contention, the Ninth Circuit expressly notes that the "malicious and sadistic"

17   standard applies to all allegations of excessive force in the prison context and the Supreme

18   Court does not require, as a threshold matter, a finding that an emergency situation, such as

19   a riot or lesser disruption, existed. However, the absence of an emergency may be probative

20   of whether the force was indeed inflicted maliciously or sadistically. *Jordan v. Gardner,* 986

21   F.2d 1521, 1528 (9th Cir. 1993).  The Ninth Circuit reasoned:

22        Whether in the context of a prison-wide disturbance or an individual
         confrontation between an officer and prisoner, corrections officers often must
23       act immediately and emphatically to defuse a potentially explosive situation.
         In such a situation, officers must make difficult judgments whether, and how
24       much, force is appropriate.  The officer rarely has time for reflection; instead,
         the decision to use force must be made in haste, under pressure, and frequently
25       without the luxury of a second chance.  Because the critique of such decisions
         in hindsight could chill effective action by prison officials, the Supreme Court
26       has held that the higher standard is appropriate.

27

28                                              19

1   *Id*.  Thus, for the reasons set forth above, Plaintiff must meet the heightened "malicious and
2   sadistic" standard.

3       Plaintiff alleges he is an overly large man, as he is six-feet-tall and weighs 225 pounds.
4   (Doc. #50 at 34).  Plaintiff also alleges he was forced to pull a cart while handcuffed and
5   shackled loaded with his personal property, which weighed approximately 360 pounds and
6   caused the restraints to "slice into his flesh." (*Id*.).  Plaintiff asserts Defendant Curry acted
7   objectively unreasonable by applying overtly tight and too small restraints, thereby, inflicting
8   excessive force and injury upon Plaintiff (*Id*.).  Under these facts, even construing the facts
9   in the light most favorable to him, Plaintiff has failed to plead facts sufficient to show
10  Defendant Curry acted maliciously and sadistically for the very purpose of causing Plaintiff
11  harm.  Thus, Plaintiff has failed to plead a constitutional violation and summary judgment
12  on Claim VI as it relates to excessive should be **GRANTED**.

13          6.   Denial of Medical Care (Count VI)

14      The government has an obligation under the Eighth Amendment to provide medical
15  care for those whom it punishes by incarceration. *See Hutchinson v. United States*, 838 F.2d
16  390, 394 (9th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  "But not every breach
17  of that duty is of constitutional proportions.  In order to violate the Eighth Amendment
18  proscription against cruel and unusual punishment, there must be a 'deliberate indifference
19  to serious medical needs of prisoners.'" *Id*. (quoting *Estelle*, 429 U.S. at 104).  Thus, as an
20  initial matter, Plaintiff must show his medical needs were serious.  Serious medical needs
21  include "[t]he existence of an injury that a reasonable doctor or patient would find important
22  and worthy of comment of treatment; the presence of a medical condition that significantly
23  affects an individual's daily activities; or the existence of chronic and substantial pain."
24  *McGuckin v. Smith*, 974 F.2d 1050, 1059-1060 (9th Cir. 1992); *see also Lopez v. Smith*, 203
25  F.3d 1122, 1131 (9th Cir. 2000).  If Plaintiff's needs were serious, then he must show
26  Defendants acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S.
27  at 104. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when

28                              20

they 'deny, delay, or intentionally interfere with medical treatment.'" *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.1992) (quoting *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir.1989). However, a delay in providing treatment, standing alone, does not constitute an Eighth Amendment violation. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). For a claim of deliberate indifference to lie a prisoner must also show the denial was substantially harmful. *Estelle*, 429 U.S. at 106. In other words, a prisoner must show the delay led to further injury. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Defendants assert Plaintiff's denial of medical care claim fails because Plaintiff failed to follow the proper procedures in seeking medical care for his minor medical complaints (Doc. #30 at 17). Defendants further assert Plaintiff was required to submit a kite rather than an emergency grievance and failed to do so (*Id.*). Finally, Defendants assert Plaintiff did not suffer from any life threatening injuries; therefore, his emergency grievance was properly denied (*Id.* at 18). Defendants contend Plaintiff did not suffer harm from the minimal delay in medical treatment; therefore, Plaintiff's claim fails as a matter of law (*Id.*).

Plaintiff argues Defendants deliberately failed to act and send medical personnel to treat Plaintiff's wounds, which caused torture and pain upon Plaintiff (Doc. #50 at 35). Plaintiff disputes Defendant Scheel's statement that Plaintiff allegedly self-inflicted his wounds by overextending his stride and contends a neutral correctional officer (Officer Cavendar) advised Defendant McDaniel that Plaintiff is not overextending his stride (*Id.*). Furthermore, Plaintiff contends that even if he was self-inflicting his own wounds, Defendants were nevertheless obligated to send medical personnel to treat his injuries (*Id.*). Plaintiff asserts Defendants' failure to act inflicted physical pain and torture upon him (*Id.* at 37).

The Second Amended Complaint alleges, and the record shows, Plaintiff informed Defendants on seven (7) different occasions that he needed medical care for his continued injuries, not just once in the form of one emergency grievance (Doc. #20 at 17). According to Plaintiff, he was denied treatment because Defendant Scheel claimed Plaintiff was self-

21

1   inflicting his own injuries (*Id.*).  Plaintiff asserts he was eventually seen by medical personnel

2   "a few weeks" later (*Id.*).  While delay in treatment, alone, does not constitute an Eighth

3   Amendment violation, an intentional interference by officials can establish deliberate

4   indifference. *Estelle*, 429 U.S. at 105.  Furthermore, a prisoner need not prove he was

5   completely denied medical care. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).

6   He need only show a serious medical need by demonstrating that the failure to treat his

7   condition resulted in further significant injury or the unnecessary and wanton infliction of

8   pain and that Defendants' response to the need was deliberately indifferent.  Plaintiff has met

9   his burden.

10        Plaintiff alleges he was in serious pain, that Defendants were aware of his injuries, and

11   that Defendants deliberately denied medical treatment.  Defendants do not dispute denying

12   Plaintiff treatment; but, instead argue Plaintiff's injuries were not sufficiently serious to

13   warrant an emergency grievance (Doc. #30 at 17-18).  While Defendants contend they are not

14   medical doctors and, therefore, cannot give Plaintiff a medical excuse for the restraint practice;

15   they nevertheless appear to assert they are qualified to determine whether Plaintiff's injuries

16   were serious enough to require medical treatment (Doc. #30 at 15).  Under these facts, there

17   are genuine issues of material fact as to whether Plaintiff's injuries were serious and whether

18   Defendants intentionally denied or delayed medical treatment for those injuries.  Accordingly,

19   Plaintiff has sufficiently pled a constitutional violation and summary judgment on Claim VI

20   as it relates to the denial of medical treatment should be **DENIED**.

21                    7.   Unsanitary Conditions (Count VII)

22        In the prison context, claims of unsanitary conditions are evaluated under the Eighth

23   Amendment. *See Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).  "[T]he

24   Eighth Amendment's ban on cruel and unusual punishment prohibits conditions of

25   confinement that pose unreasonable threats to inmates' health." *McKinney v. Anderson*, 924

26   F.2d 1500, 1507 (9th Cir.1991). "Persons involuntarily confined by the state have a

27   constitutional right to safe conditions of confinement." *Hoptowit v. Spellman*, 753 F.2d 779,

28

                                          22

784 (9th Cir.1985). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson*, 45 F.3d at 1314.

An Eighth Amendment claim against a prison official must meet two requirements, one subjective and one objective. *Farmer v. Brennan,* 511 U.S. 825 (1994). First, Plaintiff must show, as an objective matter, that Defendants' actions rise to the level of a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also, Rhodes v. Chapman*, 452 U.S. 337, 345-346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, as a subjective matter, Plaintiff must show Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, Plaintiff must show Defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it either by their actions or inactions. *Id.* at 837. Plaintiff need not show Defendants acted or failed to act believing that harm actually would befall him; it is enough that Defendants acted or failed to act despite having knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842.

Defendants assert they did not violate Plaintiff's Eighth Amendment right by forcing Plaintiff to expose his bare knees on an allegedly unclean shower floor because that requirement is based on security and safety reasons, which prevent the inmate from kicking the correctional officer, and the showers at ESP are cleaned daily (Doc. #30 at 18-19).

Plaintiff argues Defendants violated his constitutional rights by exposing him to severe unsanitary shower conditions and deadly diseases (Doc. #50 at 38). Specifically, Plaintiff argues that because Defendants do not clean the shower area prior to his use they are exposing him to a serious risk of harm of contracting a latent deadly disease from "diseased and contagious prisoners' blood, cecretion [sic], sperm, urine, saliva and hair that are displaced on the shower floor." (*Id.*). Plaintiff also argues Defendants deprived him of sufficient hygiene by providing him with one bar of soap every three days, rather than daily (*Id.*). Plaintiff contends Defendants were fully aware of the deprivation because Plaintiff has not showered

1   in over four (4) years (Doc. 50-2 at 1).  Finally, Plaintiff argues he does not have to contract

2   a deadly disease before he can seek relief (*Id.*).

3       While Plaintiff may not have to contract a disease in order to seek relief, Plaintiff must

4   show Defendants knew he faced a substantial risk of harm and disregarded that risk. *Farmer*,

5   511 U.S. at 837.  Plaintiff has not presented any evidence that he or any other inmate actually

6   contracted or transmitted any maladies or any evidence that he is being exposed to "diseased

7   and contagious inmates."   Furthermore, Plaintiff has not produced any evidence that

8   Defendants had actual knowledge that exposing Plaintiff's bare knees on the shower floor

9   posed a substantial risk of harm to Plaintiff (particularly where Plaintiff has provided no

10  evidence that *any* inmate contracted any disease in such a way).  Rather than produce evidence

11  or even specify what "diseased and contagious" inmates he is being exposed to, Plaintiff merely

12  makes conclusory allegations that the showers are unsanitary because "diseased and

13  contagious inmates" shower before him and, therefore, he might be exposed to their maladies

14  (Doc. #50 at 40).  Under these facts, Plaintiff has failed to demonstrate the existence of a

15  serious constitutional deprivation redressable under *Farmer*.   Accordingly, summary

16  judgment on Claim VII should be **GRANTED**.

17       **B.    Immunity**[5]

18            1.    Eleventh Amendment

19       The Eleventh Amendment bars suits for money damages in federal court by a citizen

20  against a state or its agencies unless the state has waived such immunity or Congress has

21  abrogated such immunity by statute. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

22  Thus, Defendants correctly assert that to the extent the Plaintiff's claims against them in their

23  official capacities are for money damages, no claim will lie.  However, Plaintiff also requests

24  injunctive relief against Defendants in their official capacities and a federal court's remedial

25

26       [5] Because the court recommends granting summary judgment on Claim VI as it relates to excessive force

27  and Claim VII, the remaining analysis applies only to the remaining claims.

28                                         24

1    power, consistent with the Eleventh Amendment, includes prospective injunctive relief. *Quern*

2    *v. Jordan*, 440 U.S. 332, 338 ("a federal court, consistent with the Eleventh Amendment, may

3    enjoin state officials to conform their future conduct to the requirements of federal law...").

4         Accordingly, to the extent Plaintiff is suing Defendants in their official capacities for

5    prospective injunctive relief, the Eleventh Amendment does not bar Plaintiff's suit; therefore,

6    summary judgment on Eleventh Amendment immunity grounds should be **DENIED**.

7                    2.    Qualified Immunity

8         "Qualified immunity protects government officials ... from liability for civil damages

9    insofar as their conduct does not violate clearly established statutory or constitutional rights

10   of which a reasonable person would have known." *Phillips*, 477 F.3d at 1079.  Under certain

11   circumstances state officials are entitled to qualified immunity when sued in their personal

12   capacities. *Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 879 (9th Cir. 2002).  When

13   a state official reasonably believes his or her acts were lawful in light of clearly established law

14   and the information they possessed, the official may claim qualified immunity. *Hunter v.*

15   *Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir.

16   2001).  Where "the law did not put the officer on notice that his conduct would be clearly

17   unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*,

18   533 U.S. 194, 202 (2001).

19        In analyzing whether the defendant is entitled to qualified immunity, the court must

20   consider two issues.  First, the court must make a threshold inquiry into whether the Plaintiff

21   alleges deprivation of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 736 (2000); *Saucier,*

22   533 U.S. at 201.  If no constitutional violation occurred, the court need not inquire further.

23   *Saucier*, 533 U.S. at 201.  If a constitutional violation did occur then the court must next

24   establish whether the right was clearly established at the time of the alleged violation such

25   that the official could have reasonably, but mistakenly, believed that his or her conduct did

26   not violate a clearly established right.  *Saucier*, 533 U.S. at 202.

27

28                                    25

1    Plaintiff sufficiently alleges a deprivation of a constitutional right in Claims I, II, III,

2    V and VI (as it relates to a denial of adequate medical care ).  Thus, the only inquiry is whether

3    these rights were clearly established at the time of the alleged violations.

4    ### a.    Equal Protection and § 1981 (Claims I and II)

5    It is and has been well-established law that a prisoner may not be subjected to invidious

6    discrimination. *Lee v. Washington*, 390 U.S. 333 (1968) (per curiam).  Furthermore, it is and

7    has been well-established that racial segregation within prisons is unconstitutional, save for

8    the necessities of prison security and discipline. *Cruz v. Beto*, 405 U.S. 319 (1972) (per

9    curiam).  Therefore, a reasonable prison official would know that classifying Plaintiff to

10   indefinite administrative segregation based on race would violate a clearly established right.

11   Accordingly, Defendants are not entitled to qualified immunity on Claims I and II.

12   ### b.    Retaliation (Claim III)

13   The prohibition against retaliatory punishment for exercising First Amendment rights

14   to file grievances is clearly established law in the Ninth Circuit for qualified immunity

15   purposes. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).  Thus, Defendants are

16   not entitled to qualified immunity on Claim III.

17   ### c.    Due Process (Claim V)

18   As previously discussed, the Ninth Circuit recognized an inmate was entitled to due

19   process regarding his validation as a prison gang member in 2003, three years after Plaintiff's

20   validation. *Bruce*, 351 F.3d 1283.  Therefore, no reasonable prison official would have reason

21   to know, in 2000, that the classification of Plaintiff as an STG would implicate a protected

22   liberty interest, let alone that the mere designation violated his due process rights. *See Neal*

23   *v. Shimoda*, 131 F.3d 818, 832 (9th Cir. 1991) (finding no reasonable prison official would have

24   reason to know that the classification of an inmate as a sex offender or the requirement that

25   the inmate complete a sex offender program as a precondition to parole eligibility would

26   implicate a protected liberty interest or violate an inmate's due process rights.).  Accordingly,

27

28                                              26

1   Plaintiff's right to due process was not clearly established at the time of his validation and

2   Defendants are entitled to qualified immunity as to Claim V.[6]

3                    **d.    *Denial of Medical Care (Claim VI)***

4          The general law regarding the medical treatment of prisoners was clearly established

5   at the time of Plaintiff's injuries. *See Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992).

6   Furthermore, it was clearly established that prison official's could not intentionally deny or

7   delay access to medical care. *See Estelle*, 429 U.S. at 104-105.  Therefore, Defendants are not

8   entitled to qualified immunity on Claim VI.

9          For the reasons set forth above, summary judgment on qualified immunity grounds

10  as to Claim V should be **GRANTED**.  Summary judgment on qualified immunity grounds as

11  to all other claims should be **DENIED**.

12              3.    <u>Supervisory Liability and Personal Participation (Count VI)</u>

13         Liability under § 1983 arises only upon a showing of personal participation by the

14  defendants in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th

15  Cir. 1989).   There is no respondeat superior liability under § 1983. *Ybarra v. Reno

16  Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).  Thus, a supervisor is

17  only liable for constitutional violations of his subordinates if the supervisor participated in

18  or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor*,

19  880 F.2d at 1045.  In other words, a supervisor may be liable under § 1983 only if there exists

20  either "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient

21  causal connection between the supervisor's wrongful conduct and the constitutional

22  violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (internal citations omitted)

23  (emphasis in original).

24

25

26      [6] Defendants' qualified immunity does preclude  injunctive or declaratory relief regarding Claim V. *See
    Neal*, 131 F.3d at 832 (finding the inmate was entitled to injunctive relief.); *Walker v. Gomez*, 370 F.3d 969 (9th

27  Cir. 2004) (finding defendants' qualified immunity did not preclude injunctive or declaratory relief).

28                                            27

Defendants assert Plaintiff has failed to show how Defendants Whorton, McDaniel, Endel, Willis and Scheel are liable in Claim VI (Doc. #30 at 22).  Specifically, Defendants assert that mere awareness of an alleged problem by grievances is insufficient to establish personal involvement in placing restraints upon Plaintiff and Defendants actions are not sufficiently linked to the alleged harm (*Id*. at 23).

Plaintiff argues he is suing Defendants in Claim VI as policymakers and for failing to send medical staff to treat Plaintiff's injuries (Doc. #50-2 at 4).  Plaintiff argues the following personal involvement for each named defendant:

1) Defendant Whorton - creating, implementing and enforcing a restraint policy that had a direct causal link to Plaintiff's injuries;

2) Defendant McDaniel - creating, implementing and enforcing a restraint policy that had a direct causal link to Plaintiff's injuries;

3) Defendant Endel -- creating, implementing and enforcing a restraint policy that had a direct causal link to Plaintiff's injuries;

4) Defendant Willis - creating, implementing and enforcing a restraint policy that had a direct causal link to Plaintiff's injuries; and

5) Defendant Scheel - creating, implementing and enforcing a restraint policy that had a direct causal link to Plaintiff's injuries and knowing about Plaintiff's injuries and deliberately failing to send medical personnel to treat and clean his injuries (*Id*. at 5).

Plaintiff essentially argues the restraint policy had a direct causal link to his injuries and Defendants Whorton, McDaniel, Endel, Willis and Scheel, as policy-makers of the restraint system, had personal involvement in his injuries by merely enforcing the policy. Plaintiff's argument fails as a matter of law.

Plaintiff's allegations are really focused on ESP prison officials' use of the restraint policy rather than the policy itself.  Plaintiff has not alleged the restraint policy is unconstitutional; but, rather, Plaintiff alleges Defendant Curry abused the policy by applying

28

too small and overly tight restraints (Doc. #50-2 at 5).  An official's misuse of the restraint policy does not render the policy unconstitutional and Plaintiff has pointed to no language in the policy that deprives him of any constitutional rights.  Therefore, even construing all Plaintiff's allegations as true, Plaintiff has failed to plead facts sufficient to show how Defendants Whorton, McDaniel, Endel, Willis and Scheel, as policy-makers and enforcers of the policy, personally participated in violating Plaintiff's rights.  Furthermore, Plaintiff has failed to show a sufficient causal connection between any wrongful conduct on the part of Defendants and Plaintiff's injuries.  Making and enforcing a constitutional policy cannot constitute the wrongful conduct that forms the basis of supervisory liability; to be held liable there must be a sufficient causal connection between the supervisor's *wrongful conduct* and the constitutional violation. *Jeffers*, 267 F.3d at 915.  Defendants cannot be held liable merely as policy-makers and enforcers of the policy.

Plaintiff also alleges Defendant Scheel denied Plaintiff's emergency grievance and deliberately refused to send medical personnel to treat and clean his injuries (Doc. #50-2 at 5).  A prison official's denial or delay in access to medical care is a constitutional violation.  Thus, Plaintiff has sufficiently shown Defendant Scheel's personal involvement in Claim VI as it relates to the denial of access to medical care.

For the reasons set forth above, summary judgment on the issue of supervisory liability as to Defendants Whorton, McDaniel, Endel and Willis in Claim VI should be **GRANTED**.  Summary judgment on the issue of supervisory liability as to Defendant Scheel in Claim VI should be **DENIED**.

### 4.   Discretionary-Act Immunity

NRS 41.031 contains Nevada's general waiver of sovereign immunity from suits arising from acts of negligence committed by state employees.  The purpose of that waiver is to compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated. *Harrigan v. City of Reno*, 86 Nev. 678, 680, 475 P.2d 94, 95 (1970) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 65-69 (1955)).

29

1  NRS 41.031 also contains exceptions.  One such exception is NRS 41.032, which precludes

2  suits based on state law against the State, its employees, or any agencies or subdivisions for

3  actions that are "discretionary" in nature. *Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18, 23

4  (1998).

5         NRS 41.032 provides, in pertinent part:

6         [No] action may be brought under NRS 41.031 or against an immune contractor

7         or an officer or employee of the state or any of its agencies or political
       subdivision which is:

8         ....

9         2. Based upon the exercise or performance or the failure to exercise or perform
       a discretionary function or duty on the part of the state or any of its agencies

10         or political subdivisions or of any officer, employee or immune contractor of any
       of these, whether or not the discretion involved is abused.

11  The Nevada Supreme Court very recently clarified its decisional law interpreting NRS

12  41.032's scope. *See Martinez v. Maruszczak*, ---- Nev. ----, 169 P.3d 720 (2007).  Turning to

13  federal decisions to aid in formulating a workable test for analyzing claims under NRS

14  41.032(2), because NRS 41.032(2) mirrors the Federal Torts Claims Act (FTCA), the Nevada

15  Supreme Court adopted the *Berkowitz-Gaubert* test, which entitles acts to discretionary-

16  function immunity if they meet two requirements: 1) the acts alleged to be negligent must be

17  discretionary, in that they involve an "element of judgment or choice", and 2) the judgment

18  must be of the kind that the discretionary-function exception was designed to shield.

19  *Martinez*, 169 P.3d at 727-728; *see also Butler v. Bayer*, ---- Nev. ----,---- 168 P.3d 1055, 1066

20  (2007).  The purpose of the FTCA exception, which NRS 41.032(2) mirrors, is to prevent

21  judicial second-guessing of legislative and administrative decisions grounded in social,

22  economic, and political policy through the medium of a tort action. *Martinez*, 499 U.S. at 323;

23  *Berkowitz v. United States*, 486 U.S. 531, 537 (1988).  Thus, when properly construed, the

24  exception only protects governmental actions and decisions based on considerations of public

25  policy. *Id*.

26

27

28                        30

1    Defendants assert they are entitled to discretionary-act immunity because the decision

2    to place Plaintiff in administrative segregation is a discretionary decision (Doc. #30 at 24).

3    Plaintiff argues Defendants were negligent, in that they owed him a duty of care and

4    breached that duty in the following ways: inflicting corporal punishment upon him by

5    handcuffing him behind his back and forcing him to pull a cart containing more than 250

6    pounds of property; racially discriminating against him, treating him unequally, retaliating

7    against him, penalizing him for exercising his Miranda rights, exposing him to harmful

8    weather, locking him in his cell 24-hours per day, segregating him for more than four (4)

9    years, stigmatizing him by validating him an STG (which Plaintiff claims is a statutory

10   enhancement), and depriving him of medical care and sanitary conditions (Doc. #50-2 at 7).

11   The alleged negligent acts revolve around the following decisions: validating Plaintiff

12   (which involves Plaintiff's issues regarding his due process and alleged Miranda rights);

13   classifying Plaintiff in administrative segregation (which involves Plaintiff's issues regarding

14   racial discrimination, equal protection, outdoor exercise, time in his cell and the amount of

15   time spent in segregation); denying Plaintiff's emergency grievance requesting medical care;

16   and restraining Plaintiff and forcing him to kneel on the shower floor.  Thus, the proper

17   inquiry is whether Defendants' decisions and actions regarding these issues satisfy both parts

18   of the *Berkowitz-Gaubert* test.

19                          **a.    Discretionary act**

20   The Nevada Supreme Court has defined a "discretionary act" as "an act that requires

21   a decision requiring personal deliberation." *University of Nevada Reno v. Stacey*, 116 Nev.

22   428, 434, 997 P.2d 812, 816 (2000) (citing *Parker v. Mineral County*, 102 Nev. 593, 595, 729

23   P.2d 491, 493 (1986)).  The United States Supreme Court defines a "discretionary act" as an

24   act that involves an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315,

25   322 (1991).  The element of judgment or choice is not satisfied if a statute, regulation or policy

26   specifically prescribes a course of action for an employee to follow because the employee has

27

28                                        31

1   no rightful option but to follow the directive. *Gaubert*, 499 U.S. at 322 (citing *Berkowitz v.*

2   *United States*, 486 U.S. 531, 536 (1988).

3        Restraining Plaintiff and forcing Plaintiff to kneel on the shower floor are not a

4   discretionary acts because there are regulations or policies specifically prescribing a course

5   of action for an employee to follow and the employee has no rightful option but to follow the

6   directive. *See* Institutional Procedure (IP) 7.11.13.7.7[7]; *see also* IP 4.10[8].  Thus, these acts do

7   not satisfy the first part of the *Berkowitz-Gaubert* test and are, therefore, not entitled to

8   discretionary-act immunity.

9        Under NDOC's Administrative Regulations, classification of inmates to administrative

10  segregation and housing inmates are discretionary acts involving elements of judgment or

11  choice that require personal deliberation. *See* AR 507.  Validating an inmate an STG and

12  responding to grievances also involve personal choices or deliberation. *See* AR 446, AR 740.

13  Thus, these decisions satisfy the first part of the *Berkowitz-Gaubert* test.

14        **b.    Actions based on considerations of social, economic, or**

15             **political policy**

16        The Supreme Court has found that "[w]here Congress has delegated the authority to

17  an independent agency or to the Executive Branch to implement the general provisions of a

18

19        [7] IP 7.11.13.7.7 provides: "The inmate will be placed in the shower.  The inmate will be ordered to kneel

20  down and the leg restraints will be removed.  The door will be secured and the inmate will be ordered to stand up,
    place his hands out through the restraint slot to have the handcuffs removed."

21        [8] IP 4.10.01.1.1 provides: "The amount of restraint equipment used is determined by the criteria

22  established in the Administrative Regulations and recognized custody levels at Ely State Prison."  IP 4.10.01.1.2
    further provides: "Officers should always use good judgment when utilizing restraints; when in doubt, the

23  correctional officer should use restraints.  *Restraints must never be used for punishment or in any way that*

24  *causes undo physical pain or restricts the blood circulation or breathing of an inmate*." (emphasis added).  IP

25  4.10.01.1.5 provides: "The use and level of restraints at Ely State Prison is dictated by the unit level, the inmate's
    classification or the security needs at a particular time."  Finally, IP 4.10.01.1.7 provides: "Instruments of restraint,

26  such as handcuffs, leg irons and straight jackets are never applied as punishment and are applied *only with the*

27  *approval of the warden of designee*." (emphasis added).

28                                         32

1    regulatory statute and to issue regulations to that end, there is no doubt that planning-level

2    decisions establishing programs are protected by the discretionary function exception, as is

3    the promulgation of regulations by which the agencies are to carry out the programs."

4    *Gaubert*, 499 U.S. at 323.  "In addition, the actions of Government agents involving the

5    necessary element of choice and grounded in the social, economic, or political goals of the

6    statute and regulations are protected." *Gaubert*, 499 U.S. at 323.  The Supreme Court found:

7            Under the applicable precedents ... if a regulation mandates a particular
             conduct, and the employee obeys the direction, the Government will be
8            protected because the action will be deemed in furtherance of the regulation....If
             the employee violates the mandatory regulation, there will be no shelter from
9            liability because there is no room for choice and the action will be contrary to
             policy.  On the other hand, if a regulation allows the employee discretion, the
10           very existence of the regulation creates a strong presumption that a
             discretionary act authorized by the regulation involves consideration of the same
11           policies which led to the promulgation of the regulations.

12   *Gaubert*, 499 U.S. at 324.

13           NDOC issued comprehensive regulations governing the classification and housing of

14   inmates, validation of inmates as STGs, and the processing of inmate's grievances.  NDOC's

15   established governmental policies, as expressed in its administrative regulations and

16   institutional procedures, allow an official to exercise discretion in these areas; therefore, "it

17   must be presumed that the [official's] acts are grounded in policy when exercising that

18   discretion." *Id.* at 324.  Accordingly, in order for Plaintiff's complaint to survive Defendants'

19   motion for summary judgment on this issue, "it must allege facts which would support a

20   finding that the challenged actions are not the kind of conduct that can be said to be grounded

21   in the policy of the regulatory scheme." *Id.* at 324-325.  "The focus of the inquiry is not on the

22   agent's subjective intent in exercising the discretion conferred by statute or regulation, but

23   on the nature of the actions taken and on whether they are susceptible to policy analysis."

24   *Gaubert*, 499 U.S. at 325.  Plaintiff has not alleged sufficient facts to overcome this

25   presumption.

26           With regards to Plaintiff's classification and STG validation, "[i]t is clear that balancing

27   the need to provide inmate security with the rights of inmates to circulate and socialize within

28                                                    33

1   the prison involves considerations based on public policy." *Alfrey v. United States*, 276 F.3d

2   557, 564-565 (9th Cir. 2002) (internal citations omitted).  Furthermore, given the clear

3   indication of congressional intent in the Prison Litigation Reform Act (PLRA) exhaustion

4   provision, § 1997e9a), it can hardly be argued the grievance system isn't grounded in public

5   policy.  Thus, Plaintiff has failed to allege sufficient facts demonstrating how the decisions to

6   validate him an STG, classify him in administrative segregation, and deny his emergency

7   grievance requesting medical care are not grounded in the policy of the regulatory scheme.

8   Accordingly, Defendants' decisions regarding these issues satisfy the second part of the

9   *Berkowitz-Gaubert* test adopted by the Nevada Supreme Court.

10          For the reasons set forth above, the district court should find Defendants' are entitled

11   to discretionary-act immunity under to NRS 41.032(2) with regards to the decisions regarding

12   validation, classification and grievance response and Defendants' motion for summary

13   judgment as to Plaintiff's state-law claims on these issues should be **GRANTED**.  The district

14   court should also find, however, that Defendants actions regarding restraining Plaintiff and

15   forcing Plaintiff to kneel on the shower floor are not entitled to discretionary-act immunity

16   and summary judgment on these issues, solely as they pertain to Plaintiff's state-law claims,

17   should be **DENIED**.[9]

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25

26   [9] Plaintiff's constitutional excessive force and unsanitary conditions claims fail as a matter of law;
however, Plaintiff may have state-law claims if Defendants violated the regulations in implementing the restraint

27   and shower policies. *Gaubert*, 499 U.S. at 324.

28                                                      34

## <u>RECOMMENDATION</u>

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Court to Apply the Unconstitutional Conditions Doctrine to all Counts in the Second Amended Complaint (Doc. #58).

**IT IF FURTHER RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Court to Apply FRCP 10(c) to All Exhibits Relating to All Pleadings (Doc. #85).

**IT IS FURTHER RECOMMENDED** the District Judge enter an order **GRANTING** in part and **DENYING** in part Defendants' Motion to for Summary Judgment (Doc. #30) as follows:

1) Summary judgment on Claims I and II should be **<u>DENIED</u>**.

2) Summary judgment on Claim III should be **<u>DENIED</u>**.

3) Summary judgment on Claim V should be **<u>DENIED</u>**.

4) Summary judgment on Claim VI (as it relates to excessive force) should be **<u>GRANTED</u>**.

5) Summary judgment on Claim VI (as it relates to denial of medical care) should be **<u>DENIED</u>**.

7) Summary judgment on Claim VII should be **<u>GRANTED</u>**.

8) Summary judgment on grounds of Eleventh Amendment immunity should be **<u>DENIED</u>**.

9) Summary judgment on grounds of qualified immunity on Plaintiff's due process claim (Count V) should be **<u>GRANTED</u>**.

10) Summary judgment on grounds of qualified immunity as to all other claims should be **<u>DENIED</u>**.

11) Summary judgment on grounds of supervisory liability on Claim VI as to Defendant Scheel should be **<u>DENIED</u>**.

12) Summary judgment on grounds of supervisory liability on Claim VI as to all other Defendants should be **<u>GRANTED</u>**.

35

13)   Summary judgment on grounds of discretionary-act immunity as to Plaintiff's state law claims for negligence and emotional distress involving Defendants' decisions regarding validation, classification and response to Plaintiff's emergency grievance should be **GRANTED**.

14)   Summary judgment on grounds of discretionary-act immunity as to Plaintiff's state law claims for negligence and emotional distress involving retraining Plaintiff and forcing Plaintiff to kneel on the shower floor should be **DENIED**.

The parties should be aware of the following:

1.   That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), FED. R. CIV. P., should not be filed until entry of the District Court's judgment.

DATED:   February 15, 2008.

_____
UNITED STATES MAGISTRATE JUDGE