1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8                                        * * * * *

9    FERNANDO R. JIMENEZ,                        )
                                                 )
10                    Plaintiff,                 )          3:05-CV-00638-LRH-RAM
                                                 )
11   v.                                          )
                                                 )          ORDER
12   GREG COX, et al.,                           )
                                                 )
13                    Defendants.                )
     _____ )

14

15          Presently before the court is the Report and Recommendation of U.S. Magistrate Robert

16   A. McQuaid (#89[1]) entered on February 15, 2008, recommending granting in part and denying in

17   part Defendants' Motion for Summary Judgment (#30) filed on June 21, 2007.  Defendants filed

18   their Objections to Magistrate Judge's Report and Recommendation (#96) on March 17, 2008;

19   Plaintiff filed his Objection to Report and Recommendation (#98) on March 19, 2008.  These

20   objections were filed pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 1B 3-2 of the Rules of

21   Practice of the United States District Court for the District of Nevada.

22          The court has conducted its *de novo* review in this case, has fully considered the

23   objections of the Plaintiff and Defendants, the pleadings and memoranda of the parties and other

24   relevant matters of record pursuant to 28 U.S.C. § 636(b)(1) and Local Rule IB 3-2.  The court

25

          [1]Refers to court's docket number

1   determines that the Magistrate Judge's Report and Recommendation shall be adopted and accepted

2   with respect to count six in part and count seven.   However the court overrules the report and

3   recommendation's conclusions regarding the remaining counts.

4   **I.        Legal Standard**

5            Summary judgment is appropriate only when "the pleadings, depositions, answers to

6   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

8   law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

9   with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

10  to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

11  587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

12           The moving party bears the burden of informing the court of the basis for its motion,

13  along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v.*

14  *Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the

15  moving party must make a showing that is "sufficient for the court to hold that no reasonable trier

16  of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259

17  (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

18           In order to successfully rebut a motion for summary judgment, the non-moving party

19  must point to facts supported by the record which demonstrate a genuine issue of material fact.

20  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that

21  might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

22  477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

23  summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A

24  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

25  jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere

2

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**II.        Discussion**

In the Second Amended Complaint (#20), Plaintiff alleges the following causes of action: (1) violations of the Equal Protection Clause of the Fourteenth Amendment (Counts I and II); (2) violations of 42 U.S.C. § 1981 (Count I); (3) First Amendment retaliation (Count III); (4) violations of the Due Process Clause of the Fourteenth Amendment (Count V); (5) use of excessive force in violation of the Eight Amendment (Count VI); (6) failure to provide medical care in violation of the Eight Amendment (Count VI); (7) unsanitary conditions in violation of the Eight Amendment (Count VII); (8) negligence (all counts); and (9) emotional distress (all counts).[2]  The court will adopt and accept the Magistrate Judge's Report and Recommendation with regard to count six's excessive use of force claim and count seven. The court will address the remaining counts below.

**A.        Immunity from Suit**

As a preliminary matter, the court notes that it accepts and adopts the Magistrate's findings with regard to Defendants' immunity from suit in their official capacity.  In particular, the court agrees that Plaintiff cannot bring a § 1983 action for monetary damages against Defendants in their official capacity.  However, Plaintiff may bring an action for prospective relief against Defendants.

The court does not consider whether to accept or adopt the Magistrate's findings with regard to Defendants' qualified immunity because below the court finds that no constitutional violation has occurred.  Thus, the first factor in the qualified immunity inquiry is not satisfied, and

---

[2] The court bases its characterization of Plaintiff's claims on the court's orders entered March 20, 2006 (#12) and May 22, 2006 (#21).

3

1    the court looks no further.

2            **B.      Equal Protection**

3            "The Equal Protection Clause of the Fourteenth Amendment commands that no State

4    shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

5    essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne*

6    *v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (*citing Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

7    Although a prisoner's "rights may be diminished by the needs and exigencies of the institutional

8    environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned

9    for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).  Accordingly, while the Fourteenth

10   Amendment's Equal Protect Clause protects prisoners from invidious discrimination based on race,

11   *id.* at 556 (*citing Lee v. Washington*, 390 U.S. 333 (1968)), the "necessities of prison security and

12   discipline" may require a prisoner's rights to be circumscribed.  *See Cruz v. Beto*, 405 U.S. 319,

13   321 (1972) (*quoting Lee*, 390 U.S. at 334).

14           To state a viable Equal Protection claim, the plaintiff "must show that the defendant

15   acted with an intent or purpose to discriminate against him based upon his membership in a

16   protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (*citing Barren v.*

17   *Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)).  Thus, to avoid summary judgment, the plaintiff

18   "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of

19   the evidence that the decision was racially motivated." *Id.* (*quoting Bingham v. City of Manhattan*

20   *Beach*, 329 F.3d 723, 732 (9th Cir. 2003)).

21           In Counts I and II, Plaintiff alleges a variety of equal protection violations.  In particular,

22   he alleges the following: (1) Defendants treated him "unequally" by considering his race in

23   classifying him as an at-risk inmate; (2) Defendants "utilized [his] race as a relevant criterion to

24   confine him in segregation"; (3) because of his race, Defendants have denied him the benefit of

25   federally-funded programs; and (4) because of his race, Defendants have refused to transfer

4

1  Plaintiff to a medium-custody prison.  (Second Am. Compl. (#20) at 4-7.)  The court will consider
2  each of these allegations below.

3          First, Defendants deny considering Plaintiff's race in classifying him in administrative
4  segregation.  In support of this argument Defendants present evidence indicating that they placed
5  Plaintiff in administrative segregation (1) for his own safety following an incident in September
6  2003 when another inmate attacked Plaintiff and (2) because of his affiliation with a "security
7  threat group" ("STG") known as the Nortenos.  (Defs.' Mot. Summ. J. (#30), Exs. A, D.)  In
8  response, Plaintiff points to the "3" that Defendants placed on the back of his identification card
9  identifying him as Hispanic as an indication that Defendants placed him in administrative
10  segregation because of his race.  Defendants counter that all inmates receive numbers on the back
11  of their identification cards and that the purpose of these numbers is purely for identification.

12          Plaintiff has failed to present evidence sufficient to permit a reasonable trier of fact to
13  find by a preponderance of the evidence that Defendants placed him in administrative segregation
14  because of his race.  Defendants have provided legitimate, security-based reasons for placing
15  Plaintiff in segregation, and Plaintiff has failed to rebut this evidence with evidence indicating that
16  Defendants placed him in administrative segregation because of his race.  Accordingly, the court
17  finds that summary judgment is appropriate for Plaintiff's equal protection claim challenging his
18  classification and placement in administrative segregation.

19          Second, Defendants also deny considering Plaintiff's race in their decision to continue
20  detaining Plaintiff in administrative segregation.  They present evidence indicating that Plaintiff
21  remains in administrative segregation for two reasons.  First, Plaintiff has refused to discuss the
22  reasons why he was assaulted in September of 2003.  (Defs.' Mot. Summ. J. (#30), Ex. A.)
23  Accordingly, because Defendants are unable to determine the cause of the assault, Defendants are
24  unable to resolve the issue, and Plaintiff's safety continues to be jeopardized.  Second, Defendants
25  have repeatedly advised Plaintiff of the process by which he can challenge his alleged gang

5

1    affiliation.  *Id.*  Plaintiff has failed to initiate this review process.

2            Although Plaintiff provides evidence indicating that he has had no disciplinary

3    violations in more than three years, has no gang affiliations, and no tattoos, this evidence does not

4    rebut the evidence demonstrating that Plaintiff is in administrative segregation for his safety.

5    While this evidence may or may not call into question Plaintiff's gang affiliation, Plaintiff has

6    refused to participate in the prescribed procedure for challenging his classification.  In sum,

7    Plaintiff presents no direct or circumstantial evidence indicating that Defendants have kept him in

8    administrative segregation because of his race, rather than for safety reasons.  Accordingly,

9    summary judgment for this claim is appropriate.

10           Next, Defendants challenge Plaintiff's argument that, by placing him in administrative

11   segregation, Defendants have denied him the benefit of federally-funded programs because of his

12   race.  Defendants present evidence indicating that there are no federally-funded programs to which

13   Plaintiff would be entitled if placed in the general population that he is not entitled to while in

14   administrative segregation.  (Defs.' Mot. Summ. J. (#30), Ex. E.)

15           Again, Plaintiff has failed to present evidence sufficient to permit a reasonable trier of

16   fact to find by a preponderance of the evidence that Defendants denied him the benefit of federally-

17   funded programs because of his race.  Plaintiff has not presented any evidence of specific programs

18   to which he would be entitled if he were in the general prison population, but is not entitled to

19   because of his administrative segregation.  Further, there is no evidence indicating that Defendants

20   denied Plaintiff access to federally-funded programs because of his race or that Plaintiff ever

21   applied for federally-funded programs.  Accordingly, summary judgment as to Plaintiff's claimed

22   denial of federal programs on equal protection grounds is appropriate.

23           Finally, Plaintiff asserts that in March of 2005 Defendants classified him to medium

24   security but have since failed to move him from administrative segregation because of his race.

25   Defendants have presented evidence indicating that they never classified Plaintiff as medium

security in March of 2005.  Plaintiff's own evidence indicates that Defendants denied his

reclassification because his risk factors were too high.  Thus, summary judgment as to this claim is

appropriate.

In sum, Plaintiff has failed to produce evidence beyond merely conclusory allegations

indicating that Defendants classified him in indefinite administrative segregation, retained him in

administrative segregation, denied him federally-funded programs, or refused to transfer him to a

medium-security facility because of his race.  On a motion for summary judgment, once the moving

party has come forward with evidence indicating the absence of genuine issues of material fact, to

successfully rebut the motion, the non-moving party must point to facts supported by the record

which demonstrate a genuine issue of material fact.  *Reese*, 208 F.3d at 738.  Plaintiff has failed to

meet this burden. As a result, summary judgment dismissing Plaintiff's equal protection claims is

appropriate.[3]

### C.    Section 1981

United States Code Title 42 Section 1981 provides that "all persons within the

jurisdiction of the United States shall have the same right in every State and Territory . . . to the full

and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed

by white citizens . . . ."  42 U.S.C. § 1981(a).  As with a violation of the Equal Protection Clause, to

establish a violation of § 1981, a plaintiff must show proof of an intent to discriminate against him

on the basis of his race.  *General Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

---

[3] The court notes that to permit Plaintiff's claims to proceed without a stronger showing of some connection between Plaintiff's segregation and his race would require the court to ignore the realities of prison life in Nevada.  Prisons in Nevada are fraught with gang violence, and gangs are often organized on the basis of race.  Thus, to ensure the safety of inmates and prison staff, to a certain extent an inmate's race may play a part in the prison's decision to separate the inmate from the rest of the prison population.  Often times, prison's will have a clear, necessary and security-based objective in so classifying their inmates.  To permit Plaintiff's claims to proceed on the mere basis of his being identified as Hispanic would severely hamper the effective and safe administration of prisons in Nevada.

For the same reasons that Plaintiff's equal protection claims fail, the court likewise finds that Plaintiff's § 1981 claims fail.  Accordingly, summary judgment for the § 1981 claims is appropriate.

### D.    Retaliation

In Count III, Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right to file grievances.  Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Further, in pursuing a retaliation claim, the plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct [of which] he complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff alleges that Defendant Drain has kept Plaintiff in administrative segregation because Plaintiff filed a grievance against Defendant Drain's son.  Plaintiff further states that Defendant Drain threatened him, saying that if Plaintiff filed a complaint against his son, Defendant Drain would ensure that Plaintiff would  "sit and rot in segregation."

Evidence of a threat to retaliate alone is insufficient to support a claim of retaliation. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).  To support a claim of retaliation, a plaintiff must demonstrate that retaliation for the exercise of the protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Here, there is no indication that Defendant Drain has played any role in the decision to keep Plaintiff in administrative segregation or that Defendant Drain has the authority to retain Plaintiff in administrative segregation.

Further, Defendants have presented evidence indicating that Plaintiff remains in

administrative segregation out of Defendants' concern for Plaintiff's safety.  In particular, Defendants note that they removed Plaintiff from the general prison population following an incident in September of 2003 when Plaintiff was attacked by a fellow inmate.  Further, Plaintiff refuses to discuss the reasons for the attack.  This, coupled with Plaintiff's possible affiliation with a prison security threat group and Plaintiff's refusal to follow the proscribed procedure for challenging his affiliation, create genuine, safety-based reasons for Plaintiff's continuing placement in administrative segregation.

The court should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 801 (citation and internal quotation omitted).  Here, Defendants have provided legitimate penological reasons for keeping Plaintiff in administrative segregation.  Moreover, there is no evidence indicating that Defendant Drain played a role in the decision to keep Plaintiff in administrative segregation.  Under these facts, no reasonable trier of fact could find by a preponderance of the evidence that Defendant Drain retaliated against Plaintiff by keeping him in administrative segregation.  Accordingly, summary judgment as to Plaintiff's retaliation claim is appropriate.

### E.    Due Process

In Count V, Plaintiff alleges that Defendants McDaniel, Endel, Willis, and Drain violated his right to due process under the Fourteenth Amendment to the United States Constitution because Defendant Drain served Plaintiff with a STG notice five years after Defendants determined that Plaintiff may be affiliated with an STG.  Defendants classified Plaintiff as a part of an STG in March of 2000.  However, Defendants did not serve Plaintiff with an STG notice informing him of his classification until August of 2005 because the prison did not adopt Administrative Regulation 446 ("AR 446"), a prison-wide policy governing STG notification, until that time.  Under the policy, inmates are provided with notice regarding their ability to challenge their STG affiliation

through formal procedures.  To date, Plaintiff has not invoked the procedures to challenge his STG affiliation.

Despite his classification in 2000, Defendants did not place Plaintiff in administrative segregation until September of 2003, three years after he was classified as an STG affiliate.  It is important to note that Plaintiff does not base his due process deprivation argument on his placement in administrative segregation.  Instead, Plaintiff bases his due process challenge on the STG classification alone.

In analyzing the procedural safeguards owed to an inmate under the Due Process Clause the court considers the following two elements: (1) whether the inmate suffered a deprivation of a constitutionally protected liberty or property interest, and (2) whether the inmate suffered a denial of adequate procedural protections.  *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).  Here, Plaintiff argues that his classification as a member of an STG implicated a liberty interest, and he was therefore entitled to procedural protections under the Due Process Clause.

The court first considers whether Plaintiff has a constitutionally protected liberty interest in being notified of his STG status.  *See Biggs*, 334 F.3d at 914.  "A liberty interest may arise from the Constitution by itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policy."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

### 1.    Due Process Clause Liberty Interest

"In the prison context, a liberty interest arising from the Constitution itself is implicated when conditions of confinement 'exceed the sentence in such an unexpected manner so as to give rise to protection by the Due Process Clause of its own force.'"  *Kritenbrink v. Crawford*, 457 F. Supp. 2d 1139, 1146 (D. Nev. 2006) (*quoting Mitchell v. Duonik*, 75 F.3d 517, 523 (9th Cir. 1996)).  The Supreme Court has held that the "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement" because confinement

10

within any of the State's correctional institutions is within the "normal limits or range of custody which conviction has authorized the state to impose." *Wilkinson*, 545 U.S. at 221 (*citing Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  Thus, the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence . . . administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (*quoting Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

Plaintiff argues that Defendants violated his "federally protected Due Process Right by stigmatizing him with an adverse criminal label without Due Process or evidence."  (Pl.'s Opp. Mot. Summ. J. (#50) at 13.)  "In determining whether a liberty interest under the Due Process Clause is implicated, [the court] must consider the stigmatization of the label itself as well as the resultant adverse consequences."  *Kritenbrink v. Crawford*, 457 F. Supp. 2d 1139, 1146 (D. Nev. 2006).  Thus, an injury to reputation by itself does not give rise to a protected liberty interest. Instead, to succeed on his due process claim, the plaintiff must show stigmatization from the label, plus adverse consequences resulting from the label.  *See Kritenbrink*, 457 F. Supp. 2d at 1146-47 (holding the plaintiff's stigmatization resulting from his classification as a sex offender plus his denial of minimum security classification and work camp assignments did not give rise to a liberty interest under the Due Process Clause itself because the plaintiff's classification did not require mandatory participation in a treatment or therapy program).

Here, the court finds that there is no genuine issue of material fact concerning whether Plaintiff faced stigmatization as a result of his classification as a prison game member.  Unlike labeling an inmate as a sex offender or committing an inmate to a mental hospital, labeling an inmate as an affiliate of an STG does not have similar, inherent adverse social consequences. Indeed, the classification of an inmate as a potential gang member is not the type of "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life" that the Supreme Court has held to create a protected liberty interest.

Moreover, even if gang classification is stigmatizing, Plaintiff's confinement in administrative segregation does not constitute conditions of confinement exceeding his sentence in an unexpected manner.  As the court noted in *Kritenbrink*, courts finding a protected liberty interest arising under the Due Process Clause in the stigmatizing effects of a label have done so only where the classification results in mandatory treatment or therapy.  457 F. Supp. 2d at 1146. In that case, in the absence of mandatory participation in a treatment or therapy program, the court held that the denial of a minimum security classification and assignment to work camp did not give rise to a liberty interest under the Due Process Clause.  *Id.* at 1147.  Similarly, here Plaintiff's affiliation with an STG does not mandate that he be placed in administrative segregation.  Instead, an STG classification is just one factor in determining whether to segregate an inmate. Accordingly, Plaintiff's segregation does not give rise to a liberty interest under the Due Process Clause itself.

### 2.      State-Created Liberty Interest

Under certain circumstances, state and prison regulations may also grant a liberty interest giving rise to due process protections.  *Wilkinson*, 545 U.S. at 221.  Here, the regulation at issue is AR 446.  AR 446 provides that an inmate must be given notice of any designation as an affiliate of an STG, and that the inmate has a right to challenge that designation in writing within ten days of receiving the notice.  (Defs.' Mot. Summ. J. (#30), Ex. J.)  To obtain relief from an STG designation, the inmate must utilize an informal debriefing process.

On September 21, 2005, pursuant to AR 446, Plaintiff received notification that he had been identified as an affiliate of an STG.  Although at "all times relevant to the Second Amended Complaint, [Plaintiff] was classified as a 'Norteno' Security Threat Group associate or affiliate," the prison did not activate STG due process procedures until 2005, when the prison implemented

1
2
3

AR 446.  (Defs.' Mot. Summ. J. (#30), Ex. C.)  Without any explanation, Plaintiff's notification states that Plaintiff's identification with an STG was based on "Northern Structure, I.G. Input 3-21-2000."  (Pl.'s Opp. Mot. Summ. J. (#52), Ex. 39.)

4
5
6
7
8
9

As noted above, Plaintiff does not assert that his confinement itself violated due process.  Indeed, Plaintiff was classified as an STG affiliate in 2000 and Defendants did not confine him to administrative segregation until 2003.  The primary impetus for his segregation was the September 2003 incident with another inmate.  Plaintiff instead argues that the validation itself denied him due process and that his continued affiliation with an STG likewise denies him due process.

10
11
12
13
14
15
16

To support a due process claim, a liberty interest created by state law is generally limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (*quoting Sandin*, 515 U.S. at 484).

17
18
19
20
21
22
23
24
25

In *Sandin*, the Court held that a prison regulation did not create a liberty interest protected by the Due Process Clause.  515 U.S. at 487.  The regulation instructed a committee reviewing an inmate's misconduct charge to find the inmate guilty and place him in segregated confinement when the charge is supported by substantial evidence.  *Id.*  The Court reasoned that the inmate's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might create a liberty interest because his confinement did not "present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence." *Id.* at 485.  Further, the Court noted that the inmate's confinement would not inevitably affect the duration of his sentence. *Id.* at 487.

13

Similarly, here the court finds that as a matter of law AR 446 does not create a liberty interest protected by the Due Process Clause.  As the Court held in *Sandin*, state-created liberty interests are generally limited to freedom from restraint.  515 U.S. at 484.  Here, an inmate's classification as an STG affiliate does not require the prison to increase the inmate's restraints in any way.  Indeed, Plaintiff was classified as an STG affiliate well before the prison placed him in administrative segregation.  His placement in administrative segregation instead stemmed from an altercation with another inmate.  Further, there is no indication in the record that an inmate's classification inevitably affects the duration of the inmate's sentence.  Thus, classification does not present a dramatic departure from the conditions of an inmate's sentence, and the regulation does not create a liberty interest protected by the Due Process Clause.  Without the existence of a protected liberty interest, Plaintiff may not pursue a due process claim.  Accordingly, the court will grant summary judgment on this claim.

### F.    Denial of Medical Care

In Count VI, Plaintiff alleges that Defendants Whorton, McDaniel, Endel, Willis, and Scheel denied him medical care in violation of the Eight Amendment of the United States Constitution.  In particular, Plaintiff alleges that Defendants failed to call for medical staff to treat injuries caused by his restraints, including "bleeding with bruises and cuts, and scars."  (Second Am. Compl. (#20) at 15.)  Plaintiff alleges that five times in December and twice in January he requested medical treatment by submitting medical forms.  Prison medical staff responded sometime later.  Also, once in December Plaintiff requested emergency medical care to treat the cuts caused by his restraints.  Defendant Sheel responded and allegedly refused to call the medical emergency staff because he believed Plaintiff was self-inflicting the wounds.

The government is required to provide inmates with medical care.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  However, not every denial of medical care violates the Constitution.  *Id.*  A violation of

the Eight Amendment's prohibition against "unnecessary and wanton infliction of pain" requires a "deliberate indifference to serious medical needs of prisoners." *Id.* (*quoting Estelle*, 429 U.S. at 104). To establish that prison officials denied medical care in violation of the Eighth Amendment, the plaintiff must satisfy the objective and subjective components of a two-part test. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (citations omitted). First, the plaintiff must prove that the injury was sufficiently serious to rise to the level of a constitutional deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An injury is sufficiently serious when a prison official's act or omission results in the deprivation of the "minimal civilized measure of life's necessities." *Hallet v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citations omitted). Second, the plaintiff must establish that the defendants acted with deliberate indifference in depriving the plaintiff of medical care. *Hallet*, 296 F.3d at 744.

A medical need is "serious" if the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGucken v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*quoting Estelle*, 429 U.S. at 104). Conversely, a serious medical need is not the type of "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." *Id.* (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Serious medical needs include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; . . . a medical condition that significantly affects an individual's daily activities; or . . . chronic and substantial pain . . . ." *Id.* at 1059-60 (citations omitted).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hallet*, 296 F.3d at 744 (citations omitted). To establish deliberate indifference, the plaintiff first must show that the defendant purposefully acted or failed to act. *McGuckin*, 974 F.2d at 1060 (citations omitted). Accidents and inadvertent failures to provide adequate medical care alone are insufficient to

15

support a cause of action under § 1983.  *Id.* (citations omitted).  Instead, for deliberate indifference to be established, the defendant must "purposefully ignore or fail to respond to a prisoner's pain or medical need."  *Id.*  Second, the defendant's actions or failure to act must have harmed the plaintiff.  *Id.*

Plaintiff argues that Defendants failed to immediately provide him with medical care for his injuries.  While delay in medical treatment alone is insufficient to rise to the level of a constitutional deprivation, it is not necessary for the delay in treatment to have caused substantial harm. *McGuckin*, 974 F.2d at 1061.  Instead, a delay in treatment causes serious medical need "whenever the failure to treat a prisoner's condition could result in further significant injury *or* the unnecessary and wanton infliction of pain."  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (citation and internal quotation omitted).

Here, the record does not indicate that the delay in treatment could result in further significant injury or that Defendants unnecessarily and wantonly inflicted pain upon Plaintiff. Plaintiff argues that the delay in treatment caused him substantial harm because the delay exposed him to a risk of infection and continued pain.  However, there is no indication in the record that Plaintiff's injuries were so severe that the delay in medical treatment caused Plaintiff substantial pain or that the delay caused his cuts and bruises to worsen.  In addition, the record does not indicate that Plaintiff's wounds were likely to become infected or that the delay resulted in an infection of any kind.  Accordingly, even when viewed in the light most favorable to Plaintiff, the evidence does not indicate that the delay exposed Plaintiff to a substantial risk of serious harm. Summary judgment with regard to Plaintiff's denial of medical care claim is therefore appropriate.

### G.    State Law Claims

Finally, Plaintiff asserts a variety of negligence and emotional distress claims under Nevada state law.  The Magistrate Judge concluded that Defendants are entitled to discretionary-act immunity under NRS 41.032(2) with regard to their decisions concerning Plaintiff's validation as

16

an STG affiliate, his classification in administrative segregation, and Defendants' response to Plaintiff's grievances. After fully considering the objections of the Plaintiff and Defendants, the pleadings and memoranda of the parties and other relevant matters of record, the court accepts and adopts the Magistrate Judge's findings.

The Magistrate Judge also concluded that Defendants are not entitled to discretionary-act immunity with regard to their actions in restraining Plaintiff and forcing him to kneel on the shower floor. This court does not consider the merits of the parties' arguments or this conclusion. Instead, because all federal claims will be dismissed, the court declines to retain supplement jurisdiction over Plaintiff's state law claims.

IT IS THEREFORE ORDERED that the Magistrate Judge's Report and Recommendation (#89) entered on February 15, 2008, is adopted and accepted with respect to counts six in part and seven. The court overrules the report and recommendation with respect to counts one, two, three, five, six in part, and the state law claims to the extent delineated in this order.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#30) is hereby GRANTED.

The Court Clerk is directed to enter judgment accordingly.

DATED this 8th day of January 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

17